UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
PORT AUTHORITY POLICE LIEUTENANTS   Case No.:
BENEVOLENT ASSOCIATION, INC., and JAMES
GRIGLIO as President of Port Authority Police
Lieutenants Benevolent Association, Inc.,

                                                                              COMPLAINT
                         Plaintiffs,               JURY TRIAL DEMANDED

     -against-

PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, TERESA RIZZUTO as Facility Manager of John
F. Kennedy International Airport, ANTHONY VERO as
Facility Manager of LaGuardia Airport, CITY OF NEW
YORK, NEW YORK CITY FIRE DEPARTMENT,
and JOHN J. HODGENS as Chief of
Department of Fire Department, City of New York,

                                Defendants,
-------------------------------------------------------------------------X

       Plaintiffs, PORT AUTHORITY POLICE LIEUTENANTS BENEVOLENT ASSOCIATION, INC. (hereinafter "LBA"), and JAMES GRIGLIO as President of Port Authority Police Lieutenants Benevolent Association, Inc. (hereinafter "President Griglio"), by and through their attorneys, DAVIS & FERBER, LLP, hereby allege as follows:

**PRELIMINARY STATEMENT**

       1.     Defendant PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter "Port Authority"), through Defendants TERESA RIZZUTO, as Facility Manager of John F. Kennedy International Airport (hereinafter "FM Rizzuto"), and ANTHONY VERO, as Facility Manager of LaGuardia Airport (hereinafter "FM Vero"), have illegally and in excess of their lawful authority entered into an agreement titled "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022 (hereinafter the "Mutual Aid Agreement"), with Defendants CITY OF NEW YORK, NEW YORK CITY FIRE DEPARTMENT (hereinafter "FDNY") and

JOHN J. HODGENS.

2. On or about August 1, 2022, Defendants entered into the Mutual Aid Agreement, agreeing to several terms and conditions applicable to "Aircraft Emergencies" at John F. Kennedy International Airport (hereinafter "JFK") and LaGuardia Airport (hereinafter "LGA").

3. The Mutual Aid Agreement was between "The Port Authority of New York and New Jersey John F. Kennedy International Airport and LaGuardia Airport" and "Fire Department, City of New York", and was signed by Terresa Rizzuto as "General Manager John F. Kennedy International Airport" and Anthony Vero as "General Manager LaGuardia Airport", and by John J. Hodgens as "Chief of Department, Fire Department City of New York."

4. As defined by the Mutual Aid Agreement, "Aircraft Emergencies" consist of "any potential or actual aircraft crash, accident and/or aircraft fire either in within the Airport or beyond Airport boundaries."

5. The Mutual Aid Agreement goes on to define "Incident Commander," "Unified Command," and details the establishment of a "Unified Command."

6. Pursuant to the Mutual Aid Agreement, an "Incident Commander. . .shall mean the individual responsible for establishing command over airport incident activities, including the development of strategies and tactics and order the release of resources."

7. Pursuant to the Mutual Aid Agreement, "Unified Command. . .shall mean the joint incident command structure formed from Incident Commanders of major organizations involved in the incident to coordinate an effective response, while at the same time allowing each organization to carry out their own jurisdictional, legal, and functional responsibilities. Under Unified Command, command is jointly shared by two or more individuals, each already having

authority in a different responding agency."

8. FM Rizzuto and FM Vero have acted *ultra vires* in entering the Mutual Aid Agreement for numerous reasons, including, but not limited to, the following: (1) the Facility Managers entering such agreement exceeds the Facility Managers' authority; (2) the Mutual Aid Agreement is in violation of the Agreement of Lease of the Municipal Air Terminals and the Amended and Restated Agreement of Lease of the Municipal Air Terminals currently in full force and effect; (3) the Mutual Aid Agreement is in violation of the Airport Certification Manual (ACM) and Airport Emergency Plans for JFK and LGA; (4) the agreement runs in contravention to the authority granted to Defendant Port Authority under the interstate Compact that created the Port Authority pursuant to the Compact Clause of the United States Constitution; and (5) the Mutual Aid Agreement is in violation of the by-laws of the Port Authority currently in full force and effect.

## NATURE OF ACTION

9. This is a civil action against the Port Authority, FM Rizzuto, FM Vero, the City of New York, the FDNY, and John J. Hodgens as Chief of Department of FDNY (hereinafter "Chief Hodgens").

10. Plaintiffs seek relief in the form of a judgment:

   a. Declaring the "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022, null and void as the signatories to the Mutual Aid Agreement did not have the legal authority to enter into the Mutual Aid Agreement pursuant to the Amended and Restated Agreement of Lease of the Municipal Air Terminals;

   b. Declaring the "Mutual Aid Agreement for Aircraft Emergencies," dated August

1, 2022, null and void as Defendant, Port Authority, was prohibited by the terms of the Amended and Restated Agreement of Lease of the Municipal Air Terminals to delegate its obligations to maintain safety and security at JFK and LGA;

c. Declaring the "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022, null and void as it violates the terms of the Airport Certification Manuals and Airport Emergency Plans at JFK and LGA without appropriate FAA approval.

d. Declaring the "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022, null and void as a matter of law in that Defendants acted *ultra vires* the interstate Compact that created the Port Authority and the by-laws of the Port Authority in entering into the "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022;

e. For costs and disbursements of this action, including attorneys' fees; and

f. For such other, further relief as this Court may deem just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

12. The venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 as the Port Authority is located and doing business in this district.

13. Further, construction of interstate compacts approved by Congress pursuant to the Constitution's Compact clause presents a federal question, as congressional consent transforms

interstate compact within that clause into law of the United States. U.S.C.A. Const. Art. 1, § 10, cl. 3; and *see Brooklyn Bridge Park Coalition v. Port Authority of New York and New Jersey*, 951 F.Supp. 383 (*ultra vires* challenge presented federal question regarding Port Authority's compact).

## JURY DEMAND

14. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

15. Plaintiff LBA is an employee organization and is the sole and exclusive representative of Police Lieutenants for the purpose of collective negotiations with the Port Authority regarding rates of pay, hours of work and other terms and conditions of employment, pursuant to the Memorandum of Agreement between the Port Authority of New York and New Jersey and the Port Authority Lieutenants Benevolent Association (January 21, 2003 – January 20, 2010), and the Memorandum of Understanding between the Detectives Endowment Association, Sergeants Benevolent Association, Lieutenants Benevolent Association and Port Authority of New York and New Jersey (2010-2023). As such, Plaintiff LBA has standing to bring the within action.

16. Defendant Port Authority was created by virtue of an interstate compact signed on April 20, 1921 and ratified by Congress on August 23, 1921. S*ee Bush Terminal Co. v. City of New York,* 152 Misc. 144, 147, 273 N.Y.S. 331, 335 (N.Y.Co.1934) (detailing history of the Port Authority), *aff'd,* 256 App.Div. 978, 11 N.Y.S.2d 554 (1st Dep't 1939), *aff'd,* 282 N.Y. 306, 26 N.E.2d 269 (1940); *Brooklyn Bridge Park Coalition v. Port Authority of New York and New Jersey*, 951 F.Supp. 383, 388 (E.D.N.Y. 1997) ("In *Hess v. Port Authority Trans-Hudson Corp.* . . .the Supreme Court expressly held that the Port Authority does not enjoy sovereign

immunity from suit in federal courts on questions of federal law. . . . The Coalition is, after all, suing to enjoin the Port Authority from acting *ultra vires* its compact in leasing Pier 3 to Strober. Resolution of this claim necessarily requires a court to construe the compact creating the Port Authority. The construction of interstate compacts approved by Congress pursuant to the Constitution's Compact Clause. . .presents a federal question.") (internal citations and quotations omitted). Such was enacted into statutory law in the State of New York as Chapter 154 of the Laws of 1921 (*See* McK. Unconsol. Laws §§ 6401 - 6424), and in the State of New Jersey as Chapter 151 (*N.J.S.A.* 32:1-1 *et seq.*).

17. Defendant City of New York is a Municipal Corporation of the State of New York.

18. Defendant New York City Fire Department is and administrative Department of the City of New York.

19. At all times relevant to the claims defendant John J. Hodgens was and is the Chief of Department of the FDNY.

**BACKGROUND**

20. The City of New York (hereinafter "City") and the Port Authority entered into an Agreement of Lease of the Municipal Air Terminals, originally dated April 17, 1947, where the City agreed to lease JFK and LGA to the Port Authority. There were thirteen Supplemental Agreements, and on November 24, 2004, the City and the Port Authority entered into an Amended and Restated Agreement of Lease of the Municipal Air Terminals (hereinafter "Lease Agreement"), with three subsequent Amendments, which incorporated all of the provisions of the original 1947 Lease Agreement and its Supplemental Agreements.

21. The Lease Agreement was in full force and effect on August 1, 2022.


22. Section 28.1(h) of the Lease Agreement, "Covenants of the Port Authority," states:

> The Port Authority shall maintain safety and security at the Municipal Air Terminals at the highest possible levels.

23. Further, Section 28.4 of the Lease Agreement, "Delegation of Obligations by the Port Authority," states:

> The Port Authority shall not delegate all or any portion of its (i) obligations or (ii) authority or discretion, under this Agreement. . .

24. Historically and continuing to this date, the responsibility to maintain safety and security at JFK and LGA has been that of the Port Authority Police Department.

25. JFK and LGA have an Airport Certification Manual (ACM) and Airport Emergency Plans (AEP), both of which are required by 14 CFR § 139 and must be approved by the Federal Aviation Administration prior to implementation. Pursuant to the ACMs and AEPs in effect on August 1, 2022, an Incident Command System is utilized in the event of airport emergencies. During such emergencies the PAPD Tour Commander assumes the role as "Incident Commander" and for operational purposes will be in "complete control of the incident's activities and coordination or resources." (JFK AEP Annex F 4.6.2) In maintaining safety and security at municipal air terminals the work of "Incident Commander" has always been performed by LBA bargaining unit members.

26. By creating a Unified Command structure where command is jointly shared by two or more individuals, the Mutual Aid Agreement with the FDNY violates the terms of the Airport Certification Manuals and Airport Emergency Plans without appropriate FAA approval.

27. Pursuant to the terms of the Lease Agreement, the Port Authority was prohibited from delegating its obligations to maintain safety and security at JFK and LGA.

28. Pursuant to the terms of the Lease Agreement, the Port Authority was prohibited from delegating its authority and discretion to anyone outside the Port Authority.

29. The Mutual Aid Agreement with the FDNY is void and unenforceable as the Port Authority was not authorized to delegate these responsibilities.

30. Pursuant to the interstate Compact, the Port Authority consists of a board of twelve commissioners, six from each state, who "may adopt suitable by-laws for its management." McK. Unconsol. Laws §§ 6405 and 6406.

31. The by-laws in place at the time the Mutual Aid Agreement was entered into became effective on September 20, 2012.

32. As set forth in the by-laws, the officers of the Port Authority are the Chairman, Vice Chairman, Executive Director, Secretary, General Counsel, Chief Financial Officer, Comptroller, Treasurer, Inspector General, and Director of the Audit Department.

33. The duties of the Executive Director are as follows:

> The Executive Director shall manage the operations of the Port Authority in compliance with the agency's policies as established by the Board of Commissioners. The Executive Director shall prepare proposals for presentation to the Board of Commissioners which carry out approved policies or which propose policies for adoption and implement such proposals after presentation to and approval by the Board of Commissioners. In furtherance of these duties, the Executive Director shall hold **executive staff** responsible and accountable for making financial, management, and **operational decisions** in compliance with the policies established by the Board of Directors, and shall consult with the Board of Commissioners, as necessary, to enable the Commissioners to perform their oversight duties described above. The Executive Director shall sign all deeds of conveyance when authorized by resolution of the Board of Commissioners. (emphasis added)

34. Rick Cotton (hereinafter "Director Cotton") has held the Executive Director

position with the Port Authority since August 2017.

35. In addition to Director Cotton, the remaining Executive Staff consists of the Board Secretary, Chief Financial Officer, General Counsel, Inspector General, Chief Communications Officer, Chief Development Officer, Acting Chief of Diversity, Equity & Inclusion Officer, Chief Engineer, Chief Ethics & Compliance Officer; Chief, Human Capital; Chief, Intergovernmental Affairs; Chief, Major Capital Projects; Chief Operating Officer, Chief Procurement & Contracting Officer, Chief Safety Management Officer, Chief Security Officer, Chief Technology Officer; Director, Aviation; Director / General Manager, PATH, Director, Port, Director, Tunnels, Bridges and Terminals; Director, World Trade Center; Director, Operation Services; Chief of Staff to the Chairman; Chief of Staff to the Executive Director; and Special Counselor to the Executive Director. *See* The Port Authority of New York and New Jersey -Executive Leadership (panynj.gov).

36. Neither FM Rizzuto nor FM Vero are members of the Executive Staff.

37. Further, there is no provision in the by-laws which authorizes the Executive Director to delegate his duties to the Facility Managers of either JFK or LGA.

38. However, pursuant to the Compact and by-laws, as set forth above, the Port Authority – and particularly, the Office of Executive Director – has promulgated various internal Port Authority Operating Procedures ("OP's") and Port Authority Instructions ("PAI's") governing its own operations and procedures.

39. Pertinent here, is PAI 10-1.03, "Delegation of Authority," issued by the Office of the Executive Director on December 17, 1959.

40. PAI 10-1.03 effectuates a delegation of the authority of the Executive Director.

9

According to its terms:

> I. Introduction
>
> The Executive Director, in carrying out his responsibility to administer the activities of the Port Authority on behalf of the Board of Commissioners, may delegate his authority to act. This instruction establishes the policies governing the exercise and delegation of the authority of the Executive Director.
>
> II. Assignment of Responsibility and Delegation of Authority to Department Heads
>
> A. The responsibility to make decisions is assigned so far as practicable to those who have developed the fact are most familiar with the subject matter. Their decisions should be based on appropriate staff concurrences whether economic [,] legal, operational or other.
>
> B. Department heads to whom authority is delegated are at all times accountable for bringing before the Executive Director for review those matters that prudent judgment would call for policy clearance, even though they may be within the area of delegated authority.
>
> C. To ensure that the policies are adhered to and that satisfactory operating results are achieved, the Executive Director is kept informed through periodic reports, internal audits and other management reviews.
>
> III. Delegation of Authority to Deputy and Assistant Deputy Department Heads
>
> Deputy and assistant department heads have the same authority as that exercised by their respective department heads and may act for them in all matters unless otherwise specified by the department head or Executive Director. . .
>
> (Note: This instruction does not affect the right of department heads to delegate specific authority to other subordinates as provided in appropriate Port Authority Instructions.)

41. Defendant Teresa Rizzuto is the Facility Manager for JFK.

42. Defendant Anthony Vero is the Facility Manager for LGA.

43. Neither the Port Authority nor Director Cotton had the authority to delegate the obligation to maintain safety and security at JFK or LGA to anyone outside of the organization.

44. Even assuming Director Cotton had the authority to enter into a mutual aid

agreement for aircraft emergencies with the FDNY, and had the Board of Commissioners so desired, he would have to enter into such an agreement personally or delegate that responsibility to others within the Port Authority.

45. Upon information and belief, at no point did Director Cotton personally enter into a mutual aid agreement for aircraft emergencies with the FDNY.

46. Upon information and belief, at no point did Director Cotton delegate any claimed authority to enter into a mutual aid agreement for aircraft emergencies with the FDNY to either FM Rizzuto or FM Vero.

47. On August 1, 2022, FM Rizzuto and FM Vero entered into a mutual aid agreement for aircraft emergencies with the FDNY without lawful authority.

**AS AND FOR A FIRST CAUSE OF ACTION**

48. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered 1 through 47 as if set forth fully herein.

49. The Mutual Aid Agreement is null and void as a matter of law, as the signatories to the Mutual Aid Agreement did not have the legal authority to enter into the Mutual Aid Agreement pursuant to the Lease Agreement.

**AS AND FOR A SECOND CAUSE OF ACTION**

50. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered 1 through 49 as if set forth fully herein.

51. The Mutual Aid Agreement is null and void as Defendant, Port Authority, was prohibited by the terms of the Lease Agreement to delegate its obligations to maintain safety and security at JFK and LGA.

## AS AND FOR A THIRD CAUSE OF ACTION

52. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs numbered 1 through 51 as if set forth fully herein.

53. The Mutual Aid Agreement is null and void as a matter of law, as it is in violation of the interstate Compact creating the Authority and the by-laws of the Port Authority currently in full force and effect, and violates the terms of the Airport Certification Manual (ACM) and Airport Emergency Plans (AEP) of JFK and LGA without proper approval by the Federal Aviation Administration. Accordingly, the signatories to the Mutual Aid Agreement, FM Rizzuto and FM Vero, acted *ultra vires* in entering into the Mutual Aid Agreement.

WHEREFORE, Plaintiffs, PORT AUTHORITY POLICE LIEUTENANTS BENEVOLENT ASSOCIATION, INC., and JAMES GRIGLIO as President of the Port Authority Police Lieutenants Benevolent Association, Inc., demand judgment: (1) declaring the "Mutual Aid Agreement for Aircraft Emergencies," dated August 1, 2022, null and void as a matter of law; (2) for costs and disbursements of this action, including attorneys' fees; and (3) for such other, further and different relief as this Court may deem just, equitable and proper.

DATED: Islandia, New York
January 19, 2023

DAVIS & FERBER, LLP

By: *Brian C. Mitchell*
BRIAN C. MITCHELL
Davis and Ferber, LLP
*Attorneys For Plaintiffs*
Islandia, New York 11749
(631) 543-2900 tel.
(631) 543-2987 fax

## VERIFICATION

STATE OF NEW ~~YORK~~ Jersey  )
) ss.:
COUNTY OF Bergen  )

JAMES GRIGLIO, President of the PORT AUTHORITY POLICE LIEUTENANTS BENEVOLENT ASSOCIATION, INC., being duly sworn, deposes and says:

I am the President of the Port Authority Police Lieutenants Benevolent Association, Inc., a Plaintiff in the within action. I have read the foregoing Verified Complaint, know the contents thereof, and the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

CARLA M ROMERO
Notary Public, State of New Jersey
My Commission Expires Oct 28, 2026

_____
JAMES GRIGLIO
President of the Port Authority
Police Lieutenants Benevolent
Association, Inc.

Sworn to before me this
20 day of January 2023.

_____
Notary Public

13